**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**GREAT AMERICAN LIFE INSURANCE**                         **PLAINTIFF**
**COMPANY**

**V.**                                                     **NO. 3:16-CV-70-DMB-JMV**

**AVA MITCHELL TANNER,**
**ALITA MARGARET MITCHELL, and**
**CRAIG J. CHEATHAM**                                          **DEFENDANTS**

**consolidated with**

**AVA MITCHELL TANNER and**                                   **PLAINTIFFS**
**PHYLLIS FERNANDEZ**

**V.**                                                     **NO. 3:18-CV-23-DMB-JMV**

**ALITA CHEATHAM MITCHELL and**
**CRAIG CHEATHAM**                                               **DEFENDANTS**

## ORDER

Before the Court is Ava Mitchell Tanner and Phyllis Fernandez's motion to amend the final judgment in these consolidated cases. Doc. #228.

**I
Procedural History**

Following Don Mitchell's death, his biological daughters, Ava Mitchell Tanner and Phyllis Fernandez, sued Don's stepson, Craig Cheatham, and Don's widow, Alita Cheatham Mitchell, alleging they unduly influenced Don in his modification of the beneficiaries of his assets. On July 22–24, 2019, a three-day bench trial was held on (1) Ava's claims that Alita and Craig exerted undue influence to cause Don to change the beneficiary from Ava to Alita on two Great American Life Insurance Company annuities, a Prudential insurance policy, a CETERA account, and a trust; (2) Phyllis' claims that Alita and Craig exerted undue influence to cause Don to change

the beneficiary from Phyllis to Alita on the Prudential policy and the trust; and (3) Ava and Phyllis' claims that Craig and Alita violated Mississippi's Vulnerable Persons Act.

On March 31, 2020, the Court issued its findings of fact and conclusions of law. Doc. #226. In the order, the Court dismissed the claims brought under the Vulnerable Persons Act. *Id*. at 24. However, the Court found that Phyllis and Ava established their claims of undue influence against Craig. *Id*. Additionally, the Court found that while the undue influence claims against Alita failed, Alita was liable to Phyllis and Ava under a theory of restitution (which was preserved in the pretrial order) based on Alita's receipt of a transfer caused by Craig's undue influence. *Id*. at 20. Accordingly, also on March 31, the Court entered a final judgment in favor of Ava and Phyllis. Doc. #227. The final judgment provides:

> In accordance with the Order entered this day, the changes of beneficiaries which are the subject of these consolidated actions are deemed void for undue influence. Judgment is entered against Craig Cheatham and Alita Margaret Mitchell in favor of Ava Mitchell Tanner in the amount of one half of the value of the Prudential policy, the whole value of the CETERA account, and one half the mineral rights in the trust. Judgment is entered against Craig Cheatham and Alita Margaret Mitchell in favor of Phyllis Fernandez in the amount of one half of the value of the Prudential Policy, and one half the mineral rights in the trust. The Clerk of the Court is **DIRECTED** to pay to Ava Mitchell Tanner the amount of the annuities on deposit with the Court.

*Id*.

On April 3, 2020, Ava and Phyllis filed a "Motion to Amend/Clarify Judgment." Doc. #228. The motion asks that (1) "the dollar value of the accounts [be] incorporated in the final judgment;" and (2) "the court order Craig Cheatham as trustee of the Don Mitchell Trust to convey that mineral interest" to Ava and Phyllis. *Id*. at 1–2. Ava and Phyllis attached to the motion as an exhibit "a proposed Amended Final Judgment for these purposes." Doc. #228 at 2; Doc. #228-1. In addition to setting forth the dollar value of the accounts and directing the transfer of the mineral interests, the proposed amended judgment states that it imposes joint and several liability on Craig

2

and Alita for the entirety of the judgment, including the value of the annuities. Doc. #228-1. After the motion was briefed,[1] the parties, at the Court's direction, submitted supplemental briefs.[2]

## II
## Analysis

Federal Rule of Civil Procedure 59(e) allows a party to file "[a] motion to alter or amend a judgment … no later than 28 days after the entry of the judgment." "Rule 59(e) motions are for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence." *Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (quotation marks omitted). A motion seeking Rule 59(e) relief "must clearly establish" the right to relief, that is, the existence of a manifest error of law or fact or newly discovered evidence. *Rosenzweigh v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003).

### A. Specific Values

Phyllis and Ava contend that while the judgment awarded the value of the Prudential policy and the Cetera account, it did not include "the stipulated dollar values of those assets." Doc. #239 at 2. Thus, Phyllis and Ava seek to clarify that (1) the value of the Prudential Policy is $186,000; (2) the value of the Cetera Account is $148,504.14; and (3) the combined value of the Great American annuities, less $9,000 in court-ordered legal fees, is $228,486.79. Doc. #228 at 1 (citing Doc. #216 at 5). Phyllis and Ava represent that this relief is unopposed but do not argue that this request implicates an error of law or new evidence. Nevertheless, the Fifth Circuit has recognized a "distinction between making a judgment more specific in the face of an original omission, and actually changing a term of the judgment." *See Aldon Indus., Inc. v. Don Myers & Assocs., Inc.*, 547 F.2d 924, 927–28 (5th Cir. 1977). Consistent with this distinction, a court may clarify the

---

[1] *See* Docs. #232, #233, #234.

[2] *See* Docs. #239, #240, #241.

3

value of a judgment, even in the absence of error. *See id.* Because Craig and Alita do not oppose the request to specify the value of the judgment, the motion will be granted in this regard.

### B. Transfer of Mineral Interests

Contending that, while the order found "title to the mineral interest … reverts to Phyllis and Ava," "the judgment does not mention the mechanics of how the reversion gets done," Phyllis and Ava seek to add language to the judgment which states, "Craig Cheatham as the trustee of the Don Mitchell Trust is hereby ordered to take all steps necessary to convey the mineral interest to Ava Mitchell Tanner and Phyllis Fernandez within 15 days." Doc. #239 at 4; *see* Doc. #228-1. Craig and Alita argue this request improperly "attempts to enjoin a party to convey real property in another jurisdiction and attempts to circumvent Arkansas courts' determination of whether a judgment related to Arkansas real property is entitled to full faith and credit." Doc. #241 at 4.

While state law controls a parties' substantive rights, the availability of equitable relief in federal court is generally governed by federal law. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945). Where, as here, a court has personal jurisdiction over a party, it "may indirectly act upon realty situated in another jurisdiction by means of an equitable decree directing that party to convey title to the foreign realty to another." *Allis v. Allis*, 378 F.2d 721, 724 (5th Cir. 1967) (citing *Fall v. Eastin*, 215 U.S. 1 (1909)). It may not, however, "*transfer title* in the other state." *Adar v. Smith*, 639 F.3d 146, 159 (5th Cir. 2011) (emphasis added). Accordingly, irrespective of the location of the mineral interests, the Court has authority to declare the transfer of the mineral interests void for undue influence and the authority to direct Craig to convey the interests to Phyllis and Ava. *See Sax v. Sax*, 294 F.2d 133, 137 (5th Cir. 1961) ("To grant the requested relief the Court would merely be required to declare [an] agreement … invalid because of fraud and then through coercive sanctions against the guilty parties compel them to take suitable action. … The

4

supplemental agreement would be nullified and the original trust arrangement reinstated. The power and responsibility of Illinois would in no way be affected."). The Court does not, however, have authority to issue a final determination as to *title* to the property. *Adar*, 639 F.3d at 159.

In its March 31 order, the Court found the transfer of the mineral interests to have been void and held that title "reverted" back to Phyllis and Ava. Doc. #226 at 19. Consistent with these rulings, the Court's judgment awarded the mineral interests to Phyllis and Ava. Doc. #227. To the extent the order and judgment purported to adjudicate title, such was beyond the Court's authority. Based on the law above, the order and the judgment should have stated that in light of the voided transfer of the mineral interests, Craig is directed to transfer the mineral interests to Phyllis and Ava. Both the order and the judgment will be modified accordingly.[3]

### C. Liability for the Annuities

Phyllis and Ava argue that the judgment against Craig and Alita should include the annuities on deposit with the Court because "[t]he funds were still acquired by … undue influence." Doc. #239 at 4. Craig and Alita argue that this is improper because neither Craig nor Alita received the funds at issue. Doc. #241 at 4.

First, as explained below, Alita may not be held liable under a theory of restitution for funds she did not receive. She therefore cannot be liable for the value of the annuities. However, unlike the concept of restitution, damages for undue influence, which "comprehends fraud,"[4] necessarily depend on the value of the property lost, not the enrichment of the defendant. *See*

---

[3] *See E.E.O.C. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Can., Local No. 120*, 235 F.3d 244, 250 (6th Cir. 2000) ("[A] judge may enlarge the issues to be considered in acting on a timely motion under Rule 59.") (quoting *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986)).

[4] *Powell v. Grant*, 23 So. 399, 400 (Miss. 1898); *see also In re Mardigian Estate*, 917 N.W. 2d 325, 345 (Mich. 2018) ("Undue influence is a species of fraud."); *Gelber v. Glock*, 800 S.E. 2d 800, 816 (Va. 2017) ("[U]ndue influence is a species of fraud."); *Cousatte v. Lucas*, 136 P.3d 484, 494 (Kan. Ct. App. 2006) ("Kansas law suggests that undue influence is a species of fraud.") (internal quotation marks omitted).

Johnny C. Parker, *Fraud and deceit*, *in* MISSISSIPPI LAW OF DAMAGES § 35:18 (3d ed.) ("The victim of actual fraud may bring an action at law sounding in tort against the offending party or one benefitting from the fraud and obtain compensatory damages suffered as a result of the fraud."); *see, e.g., Jackson v. Schrader*, 676 N.W. 2d 599, 607 (Iowa 2003) (undue influence defendant liable for $5,971.36 of gifts to third parties); *Dunn v. Poirot*, 118 A. 33, 36 (Conn. 1922) (in undue influence claim, "verdict must include the recovery of the possession of the real estate, damages equal to its rental value, with interest, and damages to the value of the personal property, with interest"). It follows then that Craig is liable for the value of the funds lost as a result of his undue influence, including the annuities. The judgment will be modified accordingly.

### D. Joint and Several Liability

Phyllis and Ava seek to impose joint and several liability on Craig and Alita for the total amount of the judgment. Doc. #239 at 3. A "district court may correct damage awards that initially allocate damages among defendants who are actually jointly and severally liable." *United States v. Sullivan*, 1 F.3d 1191, 1197 (11th Cir. 1993) (citing *G.A. Thompson and Co. v. Partridge*, 636 F.2d 945, 963–64 (5th Cir. 1981)). Accordingly, the question becomes whether Craig and Alita are jointly and severally liable. Because these consolidated cases are before the Court based on diversity jurisdiction, the answer to this question is determined by state law. *See Ballard v. United States*, 17 F.3d 116, 118 (5th Cir. 1994).

Section 85-5-7(2) of the Mississippi Code, titled "[j]oint tort-feasors; nature of liability," provides:

> Except as otherwise provided in subsection (4) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tortfeasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault.

6

Subsection (4), in turn, provides that "[j]oint and several liability shall be imposed on all who consciously and deliberately pursue a common plan or design to commit a tortious act, or actively take part in it." Miss. Code. Ann. § 85-5-7(4). "'[F]ault' means an act or omission of a person which is a proximate cause of injury or death to another person or persons, damages to property, tangible or intangible, or economic injury." Miss. Code Ann. § 85-5-7(1). Fault requires an act or omission that is "at least" negligent, *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 493 (5th Cir. 2008), but does not "include any tort which results from an act or omission committed with a specific wrongful intent." Miss. Code Ann. § 85-5-7(1).

Craig and Alita, citing § 85-5-7, contend that joint and several liability applies only to joint tortfeasors and that neither of them were found liable for a tort. Doc. #241 at 2–3. Phyllis and Ava argue that § 85-5-7 only addresses joint liability in the context of *joint tortfeasors* and was not intended to preclude joint and several liability in other situations. Doc. #239 at 2–3.

As an initial matter, § 85-5-7 was not intended to displace all law regarding the allocation of damages. *Dawson v. Townsend & Sons, Inc.*, 735 So. 2d 1131, 1141 (Miss. Ct. App. 1999). Rather, where liability "falls outside the areas governed by statute, the applicable principles are as they were at common law." *Id*. Thus, "[w]ithin the category of those at fault or of those who acted willfully, the statute provides for allocation based on percentage of responsibility." *Id*. at 1142. However, "[b]etween categories, the statute is silent" and recourse to common law is required. *Id*. at 1142. In this case, there is no allegation or argument that Craig and Alita were either both negligent or both willful so as to require allocation or joint and several liability. Accordingly, the statute does not apply. The Court must, therefore, determine the propriety of joint and several liability by reference to common law. *Id.* at 1141.

At common law, the indivisible injury doctrine cited by Phyllis and Ava imposes joint and

7

several liability where "separate, concurrent and successive negligent acts of the [defendants] combine[] to proximately produce [a] single, indivisible injury." *D & W Jones, Inc. v. Collier*, 372 So. 2d 288, 294 (Miss. 1979). This doctrine is, of course, inapplicable because no negligent acts were alleged much less proven against Alita. However, the Restatement of Restitution provides:

> Where a claim against two persons is founded upon a single deprivation as it is where a tort resulting in a single harm has been committed by two persons concurrently or acting in co-operation, the injured person, while having a cause of action against each of the parties for the entire amount of injury, is entitled only to one satisfaction. If he obtains judgment against one and it is satisfied, he thereby loses his claim against the other. The same result follows where there are successive conversions and restitution is obtained from one of the converters.

Restatement (First) of Restitution § 147 cmt. d (1937).

This provision, which is consistent with Mississippi law that "double recovery for the same harm is not permissible," *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So.2d 703, 711 (Miss. 2005), effectively imposes joint and several liability on a restitution defendant when an action is founded "upon a single deprivation." The claims here against Craig and Alita are founded on a single deprivation, the loss of the transferred assets. Accordingly, they are properly subject to joint and several liability.

However, "[t]he theory of restitution is founded on the unjust enrichment of one at the expense of another." *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005). Unjust enrichment "only applies to situations where there is no legal contract and the person sought to be charged is *in possession of money or property* which in good conscience and justice he should not retain but should deliver to another." *Id*. (emphasis added) (quotation marks omitted). Because a claim for restitution depends on *unjust enrichment*, it follows that a defendant may not be liable for restitution for proceeds never received. *See* Restatement (Third) of Restitution § 49(1) ("A

8

claimant entitled to restitution may obtain a judgment for money *in the amount of the defendant's unjust enrichment*.") (emphasis added). Accordingly, Alita may only be jointly and severally liable for the portion of the judgment related to the funds she received (the Prudential Policy and the Cetera Account).

### III
### Conclusion

Ava and Phyllis' motion to amend the judgment [228] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks an amended judgment which clarifies the amount of the judgment against Craig and Alita each, which imposes on Craig liability for all the assets, which directs Craig to transfer the mineral interests to Phyllis and Ava, and which imposes joint and several liability for the Prudential Policy and Cetera Account funds. The motion is DENIED in all other respects. Additionally, for the reasons above, the amended judgment will be modified to clarify that the judgment did not adjudicate title to the mineral interests.

**SO ORDERED**, this 1st day of July, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**